**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| ALFRED SEIPLE | : | |
| Plaintiff | : | CIVIL ACTION |
| | : | No. 13-1826 |
| v. | : | |
| | : | |
| PROGRESSIVE NORTHERN | : | |
| INS. CO. | : | |
| Defendant | : | |

**MEMORANDUM**

July 10, 2013                                                                                    ANITA B. BRODY, J.

Plaintiff Alfred Seiple brings suit against Defendant Progressive Northern Insurance Company ("Progressive") on his own behalf and on behalf of a purported class, claiming that Progressive wrongfully denied him stacked uninsured/underinsured motorist benefits. Although he explicitly waived stacked coverage—and paid accordingly reduced premiums—when he originally bought his motorcycle insurance policy, Sieple claims that Progressive was required to provide him with a new opportunity to waive stacked benefits each time he added a new motorcycle to the policy. Progressive argues that the motorcycles were added to the insurance policy via its after-acquired-vehicle clause; as a result, the state statutory requirement that insurance companies provide a new opportunity to waive stacked insurance with each "purchase" of a new vehicle was not triggered. On that basis, Progressive moves to dismiss the entire complaint. For the reasons explained below, I will grant Progressive's motion.

## I.      FACTUAL BACKGROUND[1]

The present action arises from a motor vehicle accident that occurred on May 13, 2012. At the time of the accident, Seiple was covered by a motorcycle insurance policy that he had originally purchased from Progressive in December 2009. At that point, Seiple waived stacked UM coverage. In November 2010, Seiple added a second motorcycle to the policy. Progressive did not ask him to sign a waiver of stacking, nor did he sign such a waiver. The policy was renewed for another year in December 2010. Six months later, in June 2011, Seiple added a third motorcycle to the policy, once again without being asked to sign a waiver of stacking. In August 2011, the second motorcycle was removed from the policy and replaced with a new motorcycle; once again, Seiple was not asked by Progressive to sign a new waiver of stacking. In December, the policy was renewed for another year, through December 2012. When the accident at issue occurred in March 2012, Seiple was covered under the policy, which at that point covered three motorcycles. With each additional motorcycle, Progressive issued Seiple a revised declarations page, listing the motorcycles covered under the policy.

After the accident, Progressive agreed to provide $50,000 / $100,000 in underinsured motorist ("UM") coverage under the policy.[2] Seiple claims that the amount is insufficient to cover his injuries, and asserts that he is entitled to stacked underinsured motorist coverage, the sum total of UM coverage on each motorcycle, which would total $300,000. Seiple argues that because Progressive failed to offer him an opportunity to waive stacked benefits with each addition of a new motorcycle, as required by law, he is entitled to those stacked benefits now. Seiple brings this suit seeking declaratory relief stating that he is entitled to recover stacked

---

[1] I will "accept all factual allegations in the complaint as true and view them in the light most favorable to the plaintiff." *Buck v. Hampton Twp. Sch. Dist.*, 452 F.3d 256, 260 (3d Cir.2006).

[2] Progressive was unable to produce any signed Rejection of Underinsured Motorist Coverage, as required by the Pennsylvania Motor Vehicle Financial Responsibility Law, 75 Pa. C.S.A. § 1731, and therefore agreed to provide the underinsured motorist coverage.

underinsured motorist benefits, as well as a host of contract and tort claims seeking to recover the funds he says he is owed.

## II.     LEGAL STANDARDS

### A.  Motion to Dismiss

A motion to dismiss should be granted under Rule 12(b)(6) if the moving party "under any reasonable reading of the complaint ... may be entitled to relief." *Kerchner v. Obama*, 612 F.3d 204, 207 (3d Cir.2010) (internal quotation marks omitted). The complaint must allege facts sufficient to "raise a right to relief above the speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Ashcroft v. Iqbal*, 556 U.S. 662, 677 (2009). Rather, "a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." Id. (internal quotation marks omitted). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.*

In deciding a motion to dismiss under Rule 12(b)(6), a court must "accept all factual allegations in the complaint as true and view them in the light most favorable to the plaintiff." *Buck v. Hampton Twp. Sch. Dist.*, 452 F.3d 256, 260 (3d Cir.2006). This "assumption of truth" is "inapplicable to legal conclusions." *Iqbal*, 556 U.S. at 678.

### B.  Pennsylvania Motor Vehicle Financial Responsibility Law

Seiple claims that Progressive had a legal duty to provide him a new opportunity to waive stacked UM benefits each time he added a policy to his vehicle. Pennsylvania's Motor Vehicle Financial Responsibility Law ("MVFRL") requires all motor vehicle liability insurance policies to offer uninsured and underinsured motorist coverages, but states that purchase of such coverage

is optional. 75 Pa. C.S.A. § 1731. Further, state law provides a default of stacked insurance coverage, such that "[t]he limits of coverages available . . . for an insured shall be the sum of the limits for each motor vehicle as to which the injured person is an insured." *Id*. § 1738(a). However, the insured may waive this stacked UM coverage. *Id*.  § 1738(b). The statutory provision at issue in this case relates to when the insurer is required to notify the insured of his opportunity to waive stacked coverage:

> (c) **More than one vehicle**.— Each named insured purchasing uninsured or underinsured motorist coverage for more than one vehicle under a policy shall be provided the opportunity to waive the stacked limits of coverage and instead purchase coverage as described in subsection (b).[3] The premiums for an insured who exercises such waiver shall be reduced to reflect the different cost of such coverage.

*Id.* § 1738(c).

The Pennsylvania Supreme Court has issued two somewhat contradictory decisions interpreting when, under this statute, insureds must be given the opportunity to waive stacked UM coverage. In *Sackett v. Nationwide Mut. Ins. Co.*, 919 A.2d 194 (Pa. 2007) (*Sackett I*), the court concluded that, under § 1738(c), "an insurer must provide a stacking waiver each time a new vehicle is added to the policy because the amount of coverage that may be stacked increases." *Id*. at 202. Had that been the last word, Progressive's motion would be denied, as Seiple would have been entitled to new stacking waivers with each motorcycle he added to his policy. However, the Pennsylvania Supreme Court granted a rehearing and substantially clarified its original opinion. 940 A.2d 329 (Pa. 2007) (*Sackett II*). The court solicited the opinion of the Insurance Commissioner, the cabinet-level official charged with the administration and

---

[3] Subsection (b) reads, in part, as follows:
> (b) **Uninsured motorist coverage**.--Uninsured motorist coverage shall provide protection for persons who suffer injury arising out of the maintenance or use of a motor vehicle and are legally entitled to recover damages therefor from owners or operators of uninsured motor vehicles.

75 Pa. Cons. Stat. Ann. § 1731(b).

enforcement of the MVFRL, while it was deciding whether to rehear the case. In his *amicus* statement, the Commissioner explained that the Insurance Department does not treat the addition of a new vehicle as a new purchase of coverage. "Rather, the Department has deemed this to be an extension of pre-existing coverage. Thus, the Department has not required carriers to issue, or policyholders to execute, serial waivers when vehicles are added to multi-vehicle policies in order to reaffirm the continuation for unstacked UM/UIM coverage." *Id*. at 331. The Commissioner informed the court that vehicles are generally added to existing policies via an "after acquired vehicle clause," which he stated are "included universally" in Pennsylvania vehicle insurance policies. *Id*. The *Sackett II* court detailed how these clauses generally operate:

> The clause explicitly permits consumers to extent existing coverage, with the same applicable types of coverage and limits, to new and/or substitute vehicles, with coverage applying automatically upon acquisition, subject to various conditions, including a requirement of timely subsequent notice to the insurers. According to the Commissioner, this procedure facilitates immediate consumer transactions and affords predictability and certainty in terms of the availability and scope of coverage. The Commissioner argues that *Sackett I* effectively nullifies the newly-acquired-vehicle clause in policies and strips policyholders of the associated benefits.

*Id.* The plaintiffs, the Sacketts, offered a different explanation of the clause, which they described as operating more like a safe harbor that provides coverage for a short period until the insured has informed the insurer of the new purchase. They argued that, once the formal coverage was arranged during the clause's reporting period, new UM insurance is effectively "purchased" for the new vehicle, triggering the waiver requirement of § 1738(c). *Id*. at 332.

In *Sackett II,* the Pennsylvania Supreme Court found the Insurance Commissioner's brief both significant and convincing, and declared that his interpretation was entitled to "substantial deference." *Id*. at 333 n.4. It concluded that "purchase" as used in the MVFRL is a term of art in the automobile insurance area that does not include the addition of a new vehicle to a policy

under its after-acquired vehicle clause. Therefore, it was forced to modify its *Sacket I* opinion:

"Thus, we clarify that *Sacket I* does not preclude the enforcement of the initial waiver of stacked

UM/UIM relative to coverage extended under after-acquired-vehicle provisions of an existing

multi-vehicle policy." *Id*. at 333. Specifically, the court distinguished between after-acquired-

vehicle provisions that are finite, specifying only a short term in which the new car will be

covered, and those that are continuous:

> To the degree that coverage under a particular after-acquired-vehicle provision continues in effect throughout the existing policy period, subject only to conditions subsequent such as notice and the payment of premiums, again, we clarify that Sackett I should not disturb the effect of an initial UM/UIM stacking waiver obtained in connection with a multi-vehicle policy. Again, our reasoning is that the term "purchase," as specially used in Section 1738, does not subsume such adjustments to the scope of an existing policy containing such terms. . . . However, where coverage under an after-acquired-vehicle clause is expressly made finite by the terms of the policy, *see, e.g., Bird* [*v. State Farm Mut. Ins. Co*.], 165 P.3d [343] at 346–47 [N.M. 2007], *Sackett I* controls and requires the execution of a new UM/UIM stacking waiver upon the expiration of the automatic coverage in order for the unstacked coverage option to continue in effect subsequent to such expiration.

*Id*., 334 (2007).

The upshot of these two opinions is that when an insured adds a vehicle to an existing

insurance policy via an after-acquired-vehicle clause, *Sackett II* controls and the insurer need not

provide a new opportunity to waive stacked coverage, *unless* the after-acquired-vehicle clause is

finite in scope. In that situation, *Sacket I* rules and a new waiver must be obtained.[4]

---

[4] The *Sackett II* court stated in a footnote that the decision was confined "to the scenario involving the addition of a vehicle to a multi-vehicle policy;" it was reserving for another day the question of single-vehicle policies. However, the Third Circuit has predicted that the state supreme court would apply the same rule to single-vehicle policies, since the Insurance Commissioner's submission made no distinction between single- and multi-vehicle policies when defining "purchase" under the law. *State Auto Property & Cas. Ins. v. Pro Design, P.C.*, 566 F.3d 86, 93 (3d. Cir. 2009).

### III.     ANALYSIS

Seiple's policy from Progressive defines "covered motorcycle" to include "any additional

motorcycle," which itself is defined as follows:

> A motorcycle you become the owner of during the policy period that does not
> permanently replace a motorcycle shown on the declarations page if:
> a.   We insure all other motorcycles you own;
> b.   the additional motorcycle is not covered by any other insurance policy;
> c.   you notify us within 30 days of becoming the owner of the additional motorcycle;
>      and
> d.   you pay any additional premium due.
>
> Any additional motorcycle, including an off-road vehicle, will have the broadest
> coverage we provide for any motorcycle shown on the declarations page. If you ask
> us to insure an additional motorcycle more than 30 days after you become the owner,
> any coverage we provide will begin at the time you request coverage.

Def.'s Mot. to Dismiss Pl.'s First Am. Class Action Cmpl. Ex. A at 1 ("Def.'s Mot."). By its

terms, then, the after-acquired-vehicle clause operates to guarantee that any new motorcycle

acquired during the policy period is covered by the policy, provided that it is not already covered

elsewhere and that Seiple pays additional premiums. Additionally, if Seiple notifies Progressive

of the acquisition within 30 days, coverage relates back to the date of purchase; if notification

comes after that 30 day window, the motorcycle is still covered, but the coverage will not begin

until the notice date.

By its clear terms, this after-acquired-vehicle provision is continuous rather than finite:

Coverage is automatically extended to any new motorcycle, and that coverage extends

throughout the entire coverage period. The policy's clause is similar to the one examined in

*Satterfield v. Erie Ins. Prop. & Cas.*, 618 S.E. 2d 483 (W. Va. 2005)—which the *Sackett II* court

specifically cited as an example of the type of clause that would not require a new stacked

coverage waiver. The after-acquired-vehicle clause in the *Satterfield* case extended the insurance

policy to "autos you acquired during the policy period," language nearly identical to Seiple's

policy. *Satterfield*, 618 S.E. 2d at 485. The only conditions imposed was that the company had to insure all the autos owned by the insured, and the insured had to inform the insurance company—again, just like Seiple's policy. *Id*.

Just last year, the Pennsylvania Superior Court addressed the issue of waivers of stacked UM coverage once again, interpreting an after-acquired-vehicle provision that is nearly identical to the one in Seiple's policy. *Shipp v. Phoenix Ins. Co.*, 51 A.3d 219 (Pa. Super. 2012). Although the question in that case was different—it concerned whether an insurance company must present a new waiver for stacked UM coverage when a new car *replaces* an existing vehicle on the policy—the court examined the *Sackett* decisions and looked to the nature of the after-acquired-vehicle clause in the policy before it. The *Shipp* clause read as follows:

> J. "Your covered auto" means:
>   1. Any vehicle shown in the Declarations.
>   2. Any of the following types of vehicles on the date you become the owner:
>   a. a private passenger auto; or
>   b. a pickup or van.
> This provision (J.2.) applies only if:
>   a. you acquire the vehicle during the policy period;
>   b. you ask us to insure it within 30 days after you become the owner; and
>   c. with respect to a pickup or van, no other insurance policy provides coverage for that vehicle.

*Id*. at 223. The Superior Court found that the clause "is of the continuous, non-finite variety." *Id*. "As can be seen, the coverage on the replacement vehicle will continue uninterrupted as long as the Shipps give notice to Phoenix." *Id.* Accordingly, the court held that, under *Sackett II*, new waivers were not required.

There is virtually no difference between the after-acquired-vehicle clause in *Shipp* and the clause in Seiple's policy. Both state that a new vehicle will be "covered" under the policy so long as (i) it is acquired during the policy period; (ii) the insured notifies the insurer of the acquisition within 30 days; and (iii) the new vehicle is not already covered by another insurance

8

policy. Under those circumstances, the policy's coverage extends automatically to the new vehicle on the date that the insured became the owner. Given the nearly identical nature of the *Shipp* clause and Seiple's clause, I am persuaded by the Pennsylvania Superior Court's interpretation, in *Shipp,* that *Sackett II* governs this situation. Therefore, Progressive was not required to offer Seiple an opportunity to waive stacked UM coverage with the addition of each new motorcycle, and thus Seiple's earlier waiver of stacked benefits remains in effect, meaning that he is not entitled to stacked UM coverage.

Seiple raises a variety of arguments against this finding. First, he insists that the Insurance Commissioner was "***simply wrong***" when he informed the Pennsylvania Supreme Court that most new vehicles are added to insurance policies by way of the after-acquired-vehicle clause. Pl. Resp. in Opp'n 6. Seiple insists that these after-acquired-vehicle provisions are safe harbors for "loyal customers who inadvertency neglect to tell the insurer of the acquisition of a new vehicle." *Id*. at 7 n.5. He insists that, "[i]n reality, probably less than 5% of new vehicles are added to policies by the automatic operation of that clause." *Id*. at 7. However, Seiple provides no support for this contention. Moreover, it is not my place to determine whether the Commissioner was mistaken, as I am bound to follow the law as stated by the Pennsylvania courts. I cannot ignore *Sackett II* just on Seiple's say-so.

Next, Seiple points to the latest case interpreting the Sacketts' insurance policy, so-called *Sackett III*. 4 A.3d 637 (Pa. Super. 2010). After the supreme court issued *Sackett II*, it remanded the case to the lower courts to interpret the actual after-acquired-vehicle clause in the Sacketts' policy, which at that point had not been part of the record, precluding the supreme court from applying its ruling to the facts of the case. After a bench trial, the trial court determined that the Sacketts were entitled to stacked UM benefits, and on appeal, the superior court affirmed, in

*Sackett III*. The Superior Court found that the after-acquired-vehicle clause in the Sacketts'
policy was of the finite type that triggered a new waiver requirement. The clause stated that
coverage would apply to new cars acquired by the insured, but included some restrictions:

> This coverage applies only during the first 30 days you own the vehicle unless it
> replaces your auto. If the newly acquired vehicle does not replace your auto, all
> household vehicles owned by you must be insured by us or an affiliate for this
> extension of coverage to apply.
>
> We provide this coverage only if you do not have other collectable insurance. You
> must pay added premium resulting from this coverage extension.

*Sackett III* at 640. The court noted that the clause "expressly terminated coverage for new
vehicles when the insured obtained 'other collectible insurance,'" and that it was "inherently
finite, providing 'coverage . . . only during the first 30 days' an insured acquires a new vehicle."
*Id*. at 641. The Sacketts' new vehicle was added through an endorsement, the court wrote, which
constituted "other collectable insurance" that "nullified any coverage that the Sacketts may have
had under Appellant's after-acquired vehicle clause." *Id*. This analysis led the court to conclude
that the policy was dissimilar from the *Satterfield* policy explored in *Sackett II*, and that therefore
the *Sackett I* rule should govern.

Seiple insists that his policy is the same as the Sackett policy, and that I must therefore
follow *Sacket III*—and thus, by extension, *Sackett I*. Seiple points out that the Sacketts, just like
Sieple, called their insurer to inform it of their new vehicle purchase, and that the insurer added
that new vehicle to the policy. He interprets *Sackett III* to state a *per se* rule that when a vehicle
is added to a policy via endorsement, the *Sackett I* rule applies and a waiver is required. Based on
this interpretation, Seiple argues that he is entitled to coverage under *Sacket I*, because a revised
declaration page, which was issued to him with each new addition to his policy, is the same as an
endorsement.

10

The opinions do not support this interpretation. Nowhere does *Sackett III* establish a *per se* rule about endorsements. Moreover, even if it did, I am bound not by *Sackett III*, which was a Superior Court opinion, but rather *Sackett I* and *II*, Pennsylvania Supreme Court opinions. Moreover, Seiple's only evidence that revising the declarations page is the same as adding a vehicle via endorsement—and not by the after-acquired-vehicle clause—appears to be a mistaken reading of his contract with Progressive. Seiple points to the General Provisions of the policy, which states, "The coverage in your policy may be changed *only* by issuance of a new policy or an endorsement by us." Pl.'s Resp. in Opp'n 11. He reads this to mean that the entire policy can only be changed by a new policy or an endorsement. Since no one argues that the addition of the new vehicles constituted the issuance of a new policy, it must constitute an endorsement, Seiple says. However, as Progressive points out, the "coverage" referred to in the policy statement above refers to changes to *types* of coverage—liability, first-party benefits, UM coverage, etc.—and not changes to covered vehicles. We know this because "Declarations Page" is defined in the policy as "the document showing your coverages, limits of liability, covered motorcycles, premium, and other policy-related information." Def.'s Mot. Ex. A at p.1. Therefore, the General Provision referring to a change in "coverage" does not refer to changes in "covered motorcycles," the only relevant issue here. Indeed, changes in "covered motorcycles" are specifically addressed in the after-acquired-vehicle clause.

Finally, and most importantly, the language of the clause in the Sacketts' policy that was interpreted by the *Sackett III* court is vastly different from the language in Seiple's clause. A side-by-side comparison highlights the differences between the two clauses. First, the clause in the Sacketts' policy read as follows:

> This coverage applies *only during the first 30 days you own the vehicle* unless it
> replaces your auto. If the newly acquired vehicle does not replace your auto, all

household vehicles owned by you must be insured by us or an affiliate for this extension of coverage to apply.

We provide this coverage only if you do not have other collectable insurance. You must pay added premium resulting from this coverage extension.

*Sackett III,* at 640 (emphasis added). Sieple's policy defined his covered vehicles quite differently:

> A motorcycle you become the owner of during the policy period that does not permanently replace a motorcycle shown on the declarations page if:
> a.   We insure all other motorcycles you own;
> b.   the additional motorcycle is not covered by any other insurance policy;
> c.   you notify us within 30 days of becoming the owner of the additional motorcycle; and
> d.   you pay any additional premium due.

Def.'s Mot. Ex. A at 1.

Seiple relies on the fact that both clauses mandate that the vehicle will be covered under the clause only if it is not covered by another insurance policy. He reads this to bolster his interpretation of the after-acquired-vehicle clause as a safe harbor: Once the insured notifies the insurer of the new vehicle, it is added to the policy by an endorsement and the after-acquired-vehicle clause ceases to operate, as it served its purpose to avoid a gap in coverage. Seiple overlooks the fact that the Sacketts' policy contained an explicitly finite term, which covered the vehicle "*only* for the first 30 days you own the vehicle," whereas the clause in Seiple's policy is continuous and applies indefinitely. Under *Sackett II*, which laid out this distinction between finite and continuous clauses, Seiple's policy and the Sacketts' policy simply may not be treated as the same. Seiple's policy contains exactly the sort of continuous after-acquired-vehicle clause that the *Sackett II* court concluded does not trigger a requirement that the insured be given a new waiver when adding a new vehicle, just like the policy it cited in *Satterfield*, and just like the policy examined by the Superior Court in *Shipp*. Seiple provides no reason to treat the very

12

different Seiple and Sackett policies the same, under the Superior Court's 2010 *Sackett III* ruling, but to ignore the Superior Court's 2012 treatment of the nearly identical *Ship* provision.

In the face of clear Pennsylvania Supreme Court precedent, Seiple's position is untenable. There is nothing to suggest that his new motorcycles were added to his policy via an endorsement rather than the after-acquired-vehicle clause—nor that the question of whether an endorsement was used is even relevant, let alone dispositive. The after-acquired-vehicle clause by its clear terms applies to all vehicles acquired during the policy period, and the clause in Seiple's policy is the exact type the Pennsylvania Supreme Court opined would not require the insurer to provide the insured with a new opportunity to waive stacked UM coverage. *Sackett II* governs the outcome of this motion.

## IV.   CONCLUSION

The Pennsylvania Supreme Court was clear in its ruling that an insurer need not obtain a new stacking waiver when the insured adds a new vehicle to an existing policy under a continuously operating after-acquired-vehicle clause. The court relied on the Insurance Commissioner's statement that such clauses govern the addition of new vehicles to insurance policy in the vast majority of cases. Whether this statement was correct is not an issue before me, and Seiple has provided no evidence that it is not—or that the addition of motorcycles to his specific policy did not occur via the policy's continuous and automatic after-acquired-vehicle clause. The language of that clause is clear, and without question fits under *Sackett II*'s clear holding. As a result, Seiple is not entitled to stacked UM benefits, and has not stated a claim for which relief can be granted. Accordingly, Progressive's motion is granted and Seiple's complaint is dismissed.

s/Anita B. Brody

_____

ANITA B. BRODY, J.

Copies **VIA ECF** on _____ to:                Copies **MAILED** on _____ to: